IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SHANNON KENDRICKS, #02212653 § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:20cv349 |
| § | |
| DIRECTOR, TDCJ-CID § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

*Pro Se* Petitioner Shannon Kendricks, an inmate confined in the Texas prison system, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to United States Magistrate Judge Kimberly C. Priest Johnson for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

## I.  PROCEDURAL BACKGROUND

Petitioner is challenging his Lamar County conviction, Cause No. 27447. On July 19, 2018, a jury found Petitioner guilty of possession with intent to deliver four grams or more, but less than 400 grams, of a penalty group 2 or 2-A controlled substance, a first-degree felony. (Dkt. #12-10, pp. 20-22). In accordance with the jury's verdict on punishment, the trial court sentenced Petitioner to fifty years' confinement. (Dkt. #12-10, pp. 21-22).

Petitioner appealed his conviction, which was affirmed on March 20, 2019. *Kendricks v. State*, No. 06-18-00150-CR, 2019 WL 1270810 (Tex. App. Mar. 20, 2019) (Dkt. #12-10, pp. 24-26). Petitioner did not file a petition for discretionary review. (Dkt. #11-1).

Petitioner filed an application for state habeas corpus relief on February 20, 2020. (Dkt. #12-10, pp. 27-42). He filed the instant federal petition on April 3, 2020.[1] (Dkt. #1, p. 10). On May 1, 2020, the Court ordered a stay and abeyance of the petition during the pendency of state court proceedings. (Dkt. #4). On September 23, 2020, the Texas Court of Criminal Appeals ("TCCA") denied the state habeas application without a written order. (Dkt. #12-9). On November 2, 2020, the Court returned this case to the active docket. (Dkt. #6).

In the instant petition, Petitioner asserts the following claims for relief:

1. His right to due process was violated when the venire panel was not questioned on the presumption of innocence.

2. Trial counsel provided ineffective assistance by failing to question the venire panel on the presumption of innocence.

3. Trial counsel provided ineffective assistance by failing to object to the amending of the indictment.

4. The trial court erred by denying his request to replace defense counsel.

(Dkt. #1, pp. 6-7). The Director filed a response, arguing that Petitioner's claims are without merit. (Dkt. #11). Petitioner filed a reply. (Dkt. #16).

## II. STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present.

---

[1] A *pro se* prisoner's habeas corpus petition is deemed filed, for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996, when the prisoner delivers the papers to prison authorities for mailing. *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Petitioner declared under penalty of perjury that he deposited the petition in the prison mailing system on April 3, 2020. (Dkt. #1, p. 10).

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore*, 313 F.3d at 881 (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)). Where, as here, "the state habeas court and trial court are one in the same," the presumption of correctness afforded the state habeas court's factual

determinations is "especially strong." *Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) (citations omitted).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

"In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an

4

adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Thus, a state application that is denied without written order by the TCCA, as in the present case, is an adjudication on the merits. *See Singleton*, 178 F.3d at 384; *Ex parte Torres*, 943 S.W.2d at 472.

In addition to the standard of review imposed by the AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court recently explained that, while the passage of the AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, ___ U.S. ___, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if the AEDPA applies. *See id.* ("[A] federal court must deny relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original). Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); or (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## III.  ANALYSIS

A.  *Voir Dire* **of Venire Panel (Claim One)**

In Claim One, Petitioner contends that his right to due process was violated when the venire panel was not questioned on the presumption of innocence. (Dkt. #1, p. 6; Dkt. #16, pp. 6-7). The Court construes this claim as an allegation of juror bias.

The Sixth Amendment guarantees that an accused shall enjoy the right to a trial by an impartial jury. *Parker v. Gladden*, 385 U.S. 363, 364 (1966); *Virgil v. Dretke*, 446 F.3d 598, 605 (5th Cir. 2006). Federal courts must initially presume that a jury was impartial and will not readily presume that a juror is biased. *Willie v. Maggio*, 737 F.2d 1372, 1379 (5th Cir. 1984). A juror's bias may be actual or implied, but only extreme situations would justify a finding of imputed bias. *Solis v. Cockrell*, 342 F.3d 392, 395-96 (5th Cir. 2003). Furthermore, a potential juror's preconceived notion of the innocence or guilt of the defendant, by itself, is not sufficient to rebut the presumption that a prospective juror is impartial. *Virgil*, 446 F.3d at 609. A juror is impartial if he or she can set aside his or her impression or opinion and render a verdict based on the evidence presented in court. *Id. Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. *See Rosales-Lopez v. United States*, 451 U.S. 182, 188-89 (1981).

During *voir dire* in Petitioner's case, the jury was advised: "All defendants, if they're charged with a crime, have rights. They're presumed innocent." (Dkt. #12-5, p. 62). The *voir dire* transcript demonstrates that the potential jurors were asked questions to elicit information about possible bias. (*See generally* Dkt. #12-5). Petitioner has failed to identify any statement by any potential juror indicating bias or the inability to honor the presumption of innocence. Instead, Petitioner asserts that, because the jurors on the panel were not asked directly if they could commit

6

to the presumption of innocence, it must be presumed that the jurors were biased. Such presumption is contrary to federal law. *See Willie*, 737 F.2d at 1379. Simply put, Petitioner has failed to show that any particular juror was biased and that the trial was fundamentally unfair. Petitioner's claim is conclusory, and conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). Petitioner has failed to demonstrate that the TCCA's denial of this claim was unreasonable or contrary to clearly established federal law. Thus, Petitioner has not shown that he is entitled to federal habeas corpus relief with respect to this due process claim.

**B.    Ineffective Assistance of Counsel (Claim Two and Claim Three)**

Next, Petitioner asserts claims of ineffective assistance of trial counsel. (Dkt. #1, pp. 6-7).

A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687.

Under the first *Strickland* prong, the petitioner must show that counsel's performance was deficient. *Id.* To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of

> counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show that his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Reviewing Petitioner's ineffective assistance of counsel claim through the lens of the AEDPA means that he has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under

8

*Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The Court must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Furthermore, a petitioner's allegations of ineffective assistance of counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). Even when liberally construing pro se pleadings, "mere conclusory allegations on a critical issue . . . are insufficient to raise a constitutional issue." *Black v. Davis*, 902 F.3d 541, 547 (5th Cir. 2018) (citation omitted). More specifically, conclusory statements are insufficient to sustain a claim of ineffectiveness. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001).

With the foregoing principles in mind, the Court will turn to Petitioner's specific allegations of ineffective assistance of counsel.

    1.    **<u>Failure to Question Venire Panel (Claim Two)</u>**

In Claim Two, Petitioner argues that trial counsel provided ineffective assistance by failing to question the venire panel on the presumption of innocence. (Dkt. #1, p. 6; Dkt. #16, pp. 7-9).

A trial counsel's method of *voir dire* is a strategic question; thus, it "cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Teague v. Scott*, 60 F.3d 1167, 1172

9

(5th Cir. 1995). "The selection of a jury is inevitably a call upon experience and intuition. The trial lawyer must draw upon his own insights and empathetic abilities. Written records give [the court] only shadows for measuring the quality of such efforts. . . . [The court's] willingness to second guess them must be informed by the reality of their task and the limits of the recording of their work before [the court]." *Romero v. Lynaugh*, 884 F.2d 871, 878-79 (5th Cir. 1989).

As discussed above in Claim One, Petitioner has failed to identify any statement by any juror on the venire panel indicating bias or the inability to honor the presumption of innocence. Under these circumstances, trial counsel's decision not to specifically ask the potential jurors whether they could honor the presumption of innocence does not fall outside the range of acceptable judgment. Furthermore, the trial court, in denying Petitioner's request for substitute counsel, observed that trial counsel's *voir dire* "was very proper and what we would consider to be within the reasonable bounds of trial representation," noting that counsel "covered his areas that he needed to cover." (Dkt. #12-6, p. 7). The trial court also explained to Petitioner that "lawyers get to make decisions as to how to prosecute or how to defend the case." (Dkt. #12-6, p. 7). Petitioner has not rebutted the presumed correctness of the trial court's findings with clear and convincing evidence. Petitioner has failed to allege any facts rebutting the presumption that his counsel's questioning of the venire panel was part of sound trial strategy. Nor has Petitioner demonstrated that any of the jurors who sat on the jury were biased. Considering that the jury was correctly instructed with regard to the law, including the presumption of innocence, the State's burden, the elements of the crime, and the jury's role in determining the facts, Petitioner cannot establish that his counsel performed deficiently or that his performance caused harm. *Strickland*, 466 U.S. at 689. Petitioner has failed to demonstrate that the TCCA's denial of this claim was

10

unreasonable or contrary to clearly established federal law. Thus, Petitioner has not shown that he is entitled to federal habeas corpus relief with respect to this ineffective assistance of counsel claim.

### 2. Failure to Object (Claim Three)

In Claim Three, Petitioner asserts that trial counsel provided ineffective assistance by failing to object to the amending of the indictment. (Dkt. #1, p. 7; Dkt. #16, pp. 9-10).

Petitioner was originally charged with one count of possession with intent to deliver a controlled substance "in an amount of 1 gram or more but less than four grams," enhanced by two prior convictions. (Dkt. #12-10, p. 5). The State filed a Motion to Amend the Indictment (Dkt. #12-1, pp. 17-18), which the trial court granted (Dkt. #12-1, p. 37). The indictment was then physically altered to amend the charge against Petitioner to possession with intent to deliver a controlled substance "*in an amount of 4 grams or more but less than 400 grams*," enhanced by two prior convictions. (Dkt. #12-10, p. 6) (emphasis added).

Article 28.10(c) of the Texas Code of Criminal Procedure provides that an indictment may not be amended over the defendant's objection as to form or substance if the amended indictment charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced. A different offense in this context means a different statutory offense. *Flowers v. State*, 815 S.W.2d 724, 728 (Tex. Crim. App. 1991). "A change in the elements of an offense changes the evidence required to prove that offense, but it is still the same offense." *Id.* In determining whether a defendant's substantial rights were violated, the key question is whether the amendment had an adverse impact on the defendant's ability to prepare a defense. *Id.* at 729.

As noted above, Petitioner was originally indicted for possession of a controlled substance with intent to deliver under Section 481.113 of the Texas Health & Safety Code. The amended indictment charged him with the identical offense under the same statutory section. The charging

instruments differ only in the quantity of the controlled substance allegation. The punishment range for the original quantity is a second degree felony set out in Section 481.113(c). The punishment range for the amended quantity is a first degree felony set out in Section 481.113(d). Both the original and amended indictment contain the identical offense. "The fact that the punishment range is different, and involves a different subsection of the same statute, does not transform the charge into a 'different offense' as that term is used in Article 28.10(c)." *Gullatt v. State*, 368 S.W.3d 559, 567 (Tex. App. 2011). In sum, the indictment, as amended, did not charge Petitioner with a different statutory offense. Nor has Petitioner demonstrated that the amendment prejudiced a substantial right.[2]

Because the amended indictment did not charge Petitioner with a different statutory offense and because Petitioner has not demonstrated that the amendment prejudiced a substantial right, any objection to the amending of the indictment would have been without merit. It is clear in the Fifth Circuit that "counsel is not required to make futile motions or objections." *See Roberts v. Thaler*, 681 F.3d 597, 611 (5th Cir. 2012); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984). "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). Furthermore, Petitioner does not identify any legal basis on which an objection to the amending of the indictment would have succeeded. Bare, conclusory allegations unsupported by other indicia of reliability in the record fall short of the *Strickland* requirements for determining ineffective assistance of counsel. *See Ross v. Estelle*, 694 F.2d 1008,

---

[2] Even if the State could not amend the indictment, however, nothing in Article 28.10 would have prevented the State from reindicting Petitioner. *See Wisenbaker v. State*, 782 S.W.2d 534, 536 (Tex. App. 1989) (holding that Article 28.10 has no applicability to a "reindictment"); *see also Cox v. Dretke*, No. 3:02-CV-0546-M, 2004 WL 2624649, at *12 n.15 (N.D. Tex. Nov. 18, 2004) ("Because "possession of cocaine and possession of methamphetamine" constitute different statutory offenses, . . . the State may have been unable to amend the information had defendant timely objected to such amendment . . . . Even if the State could not amend the information, however, nothing in Article 28.10 would have prevented the State from proceeding on an entirely new information or from indicting petitioner in the first instance.") (citations omitted), *report and recommendation adopted*, No. 3:02-CV-0546-M, 2004 WL 3167747 (N.D. Tex. Dec. 21, 2004).

1011-12 n.2 (5th Cir. 1983). Petitioner has failed to demonstrate that the TCCA's denial of this claim was unreasonable or contrary to clearly established federal law. Thus, Petitioner has not shown that he is entitled to federal habeas corpus relief with respect to this ineffective assistance of counsel claim.

### C.      Denial of Substitute Counsel (Claim Four)

In Claim Four, Petitioner alleges that the trial court erred by denying his request to replace defense counsel, resulting in a violation of his Sixth Amendment right to counsel. (Dkt. #1, p. 7; Dkt. #16, pp. 10-11).

On May 23, 2017, the trial court appointed counsel to represent Petitioner. (Dkt. #12-1, p. 7). On February 13, 2018, trial counsel filed a motion to withdraw due to his relocation from Lamar County. (Dkt. #12-1, pp. 40-41). The trial court denied the motion on February 28, 2018. (Dkt. #12-1, p. 42). On the first day of trial, trial counsel informed the court that Petitioner requested that trial counsel withdraw from representing him. (Dkt. #12-6, p. 5). Trial counsel supported the withdrawal, noting that Petitioner's "demeanor has become—between he and I has become somewhat combative," and that Petitioner was "unable and unwilling to assist [counsel] in his defense." (Dkt. #12-6, pp. 5-6). The trial court discussed the issue with Petitioner, who stated that he was "not getting the full representation that [he] need[ed]" and expressed frustration with trial counsel's investigation of his case—specifically, that trial counsel did not hire a private investigator to uncover alleged video footage of his encounter with law enforcement. (Dkt. #12-6, pp. 6-8). The trial court indicated that it would not appoint new counsel "at this late stage with [trial counsel] having already picked the jury" and that trial counsel's *voir dire* "was very proper and . . . within the reasonable bounds of trial representation," noting that counsel "covered his areas that he needed to cover." (Dkt. #12-6, p. 7). The trial court also explained to Petitioner that

13

"lawyers get to make decisions as to how to prosecute or how to defend the case." (Dkt. #12-6, pp. 7-8). After receiving Petitioner's assurance that he was not requesting to represent himself, the trial court denied Petitioner's request to discharge his counsel. (Dkt. #12-6, p. 12).

The Constitution guarantees an accused the right to have the assistance of counsel for his defense in all criminal prosecutions. *Wheat v. United States*, 486 U.S. 153, 158 (1988). That right does not include a guarantee of the right to counsel of defendant's choice. *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).

Granting a motion to discharge defense counsel is within the trial court's discretion. *Howard v. Thaler*, No. CIV.A. H-12-0026, 2013 WL 1558691, at *12 (S.D. Tex. Apr. 10, 2013). A Sixth Amendment violation occurs only if a court refuses to inquire into a seemingly substantial complaint about defense counsel. *Id.* Otherwise, the trial judge has broad discretion to decide whether to grant a request for the substitution of counsel. *Id.* The right to counsel cannot be manipulated to interfere with the orderly procedures of the court or the fair administration of justice. *See Yohey*, 985 F.2d at 228. "While a criminal defendant has an absolute right to be represented by retained counsel of his choosing and must be informed of such right by the court, if the defendant is indigent and unable to retain private counsel, a lawyer will be appointed by the court. An indigent defendant is not entitled to have a particular lawyer represent him." *Howard*, No. CIV.A. H-12-0026, 2013 WL 1558691, at *12. Nor is an indigent defendant entitled to a different appointed lawyer unless good cause is shown. *See Morris v. Slappy*, 461 U.S. 1 (1983). A defendant's disagreement with counsel does not constitute good cause for him to receive a new attorney. *See id.*; *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973); *United States v. Creel*, 158 F. App'x 627, 628 (5th Cir. 2004) (unpublished).

The Sixth Amendment right to counsel "comprehends a qualified right to select and be represented by counsel of choice," belonging solely to criminal defendants possessing sufficient assets to retain such counsel. *See United States v. Bissell*, 866 F.2d 1343, 1351 (11th Cir. 1989).

The Fifth Circuit has stated:

> In order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict. If a court refuses to inquire into a seemingly substantial complaint about counsel when he has no reason to suspect the bona fides of the defendant, or if on discovering justifiable dissatisfaction a court refuses to replace the attorney, the defendant may then properly claim denial of his Sixth Amendment right. In the absence of a conflict which presents such a Sixth Amendment problem, the trial court has discretion to decide whether to grant a continuance during the course of trial for the substitution of counsel, and that decision will be reversed only if the court has abused its discretion.

*Young*, 482 F.2d at 995 (quoting *United States v. Calabro*, 467 F.2d 973, 986 (2d Cir. 1972)) (citations omitted).

Petitioner points to no evidence, and the court finds none in the record, that his appointed trial counsel failed in his responsibilities to Petitioner or that counsel was otherwise burdened by an actual conflict of interest. The record as a whole clearly reflects trial counsel's meaningful adversarial testing of the State's case. Furthermore, the trial court inquired into Petitioner's dissatisfaction with counsel, which stemmed from disagreements with counsel's handling of the case. Petitioner has not shown that his disagreements with counsel constituted good cause for him to receive a new attorney. *See Morris*, 461 U.S. at 13-14; *Young*, 482 F.2d at 995. Moreover, Petitioner has failed to meet his burden of demonstrating an actual conflict existed so as to establish a violation of his Sixth Amendment rights or show how any conflict of interest prejudiced him. Consequently, Petitioner has not shown that the trial court's refusal to substitute counsel on the first day of trial violated his Sixth Amendment right to counsel. Petitioner has failed to demonstrate

that the TCCA's denial of this claim was unreasonable or contrary to clearly established federal law. Accordingly, Petitioner has not shown that he is entitled to federal habeas corpus relief with respect to this Sixth Amendment claim.

## IV.  CONCLUSION

Petitioner has failed to show that any of his claims have merit. Petitioner has failed to demonstrate that his Sixth Amendment right to trial by an impartial jury was violated when the venire panel was not specifically questioned on the presumption of innocence. Petitioner also has failed to demonstrate that trial counsel rendered ineffective assistance under *Strickland*. Additionally, Petitioner has failed to show that the trial court's refusal to substitute counsel violated his Sixth Amendment right to counsel. Above all, Petitioner fails to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Williams*, 529 U.S. at 402-03, 405-06; *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). In sum, Petitioner fails to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that the Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding

that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting that "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is recommended that reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended the Court find Petitioner is not entitled to a certificate of appealability.

## VI.  RECOMMENDATION

It is recommended that the above-styled petition filed under 28 U.S.C. § 2254 be denied and that the case be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 9th day of January, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE